**Richard SEAMAN, as Master of the FISHING VESSEL KATHRYN JO-ANN, Plaintiff,**

v.

**The TANK BARGE OC601, Official Number 281078, Defendant.**

**Civ. A. No. 5642–69–T.**

United States District Court, S. D. Alabama, S. D.

Feb. 18, 1971.

Warren L. Finch, James D. Brooks, Mobile, Ala., for plaintiff.

A. Clay Rankin, III, Mobile, Ala., N. B. Barkley, Jr., New Orleans, La., for defendant.

DANIEL HOLCOMBE THOMAS, Chief Judge.

The above-styled case was regularly set down for trial before the Court on a former day and after hearing and considering the evidence and arguments of counsel, the Court hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. This is an *in rem* proceeding for salvage by the master of a shrimp boat on behalf of the vessel and the crew against a tank barge. The salvage operation took place at night in moderate seas in the Gulf of Mexico off the Alabama-Mississippi Coast. Defendant has filed a counterclaim against plaintiff for his unreasonable delay in releasing the salvaged barge.

2. The KATHRYN JO-ANN is a sixteen year old, 58 foot wooden hull shrimp boat weighing 37.34 gross tons. The

Tank Barge OC601 is a ten year old, steel hull tank barge weighing 359 gross tons. Her dimensions are 160′ x 35′ x 8′ and she has been used primarily in salt water service. The OC601 was not carrying cargo at the time of this salvage operation.

3. While Mrs. Joyce Dean is the owner of record of the KATHRYN JO-ANN,[1] she is actually co-owner with Richard Seaman, Captain of the KATHRYN JO-ANN. Captain Seaman furnished some of the money used to purchase and refit the vessel. Mrs. Dean and Captain Seaman are living together as man and wife, although they are not married.

4. On August 31, 1969, at approximately 10:00 P.M., the KATHRYN JO-ANN came upon the unlighted, unmanned OC601 in the Gulf of Mexico about ten miles south of Horn Island.[2] The KATHRYN JO-ANN actually struck the OC601, but the collision only amounted to a minor touching of the KATHRYN JO-ANN's starboard outrigger. There was no hull-to-hull contact and the KATHRYN JO-ANN suffered only minor damage. The OC601 sustained no collision damage.

5. While the KATHRYN JO-ANN had been through squalls earlier, it was not raining at the time of the collision. However, there were 4–5 foot seas and it was dark. The aptly named Captain Seaman, upon sighting the barge, did everything possible to avoid the collision and was not guilty of any negligence.

6. After the collision, Captain Seaman rigged two bridles with about 200 feet of tow line and took the OC601 in tow. Before getting under way, Captain Seaman had to board the barge twice—

1. The United States Coast Guard certificate of ownership of vessel dated May 8, 1970, shows Mrs. Dean as the sole owner.

2. The OC601 had been moored in the Breton Sound area in the Gulf of Mexico, but apparently broke away during Hurricane "Camille" on or about August

17, 1969. The barge subsequently went aground on the south side of Horn Island and was still aground as late as August 30, 1969. Experts testified that it was absolutely impossible for the OC601 to have been refloated, solely by natural means, but the Court finds that the impossible did in fact happen.

once to secure the lines and again to install a light. The KATHRYN JO-ANN was "manned" by a crew of three, Captain Seaman, Mrs. Dean, and her daughter, Mrs. Gloria Ellis. Mrs. Dean handled the wheel while Captain Seaman rigged the tow.

7. The KATHRYN JO-ANN towed the OC601 to Bayou La Batre, Alabama, her home port, some 25 miles from the point of collision.[3] The normally three hour trip took about seven and one-half hours. After their arrival at about 6:00 A.M., Captain Seaman docked both vessels at the Alabama State Docks at Bayou La Batre.

8. The KATHRYN JO-ANN arrived in Bayou La Batre on Monday, September 1, 1970. The shrimp and fish catch was discharged the next day in a rotten and unsaleable condition. Plaintiff offered no evidence to show why the cargo was not unloaded immediately. Since insufficient ice was one of the reasons for returning to port, the Court finds that such conduct constitutes negligence and either caused or contributed to the loss of the catch.

9. The Court finds that the following damages to the KATHRYN JO-ANN were caused by the collision or by subsequent salvage operations:

| ARTICLE | COST |
| --- | --- |
| Anchor | 20.00 |
| 100′ Nylon Line | 250.00 |
| Stay Wires for Starboard Outriggers | 137.50 |
| Starboard Outrigger | 87.50 |
| Cost of Hauling Out to Inspect | 58.00 |
| TOTAL | $553.00 |

10. The KATHRYN JO-ANN lost approximately thirty days service while repairs were being made. The Court

finds that the major items requiring repairs were due to normal wear and tear; therefore, the collision and salvage operations were responsible for only a portion of the required repairs. Consequently, the lost earnings while out of service, were only partly occasioned by the collision and salvage operation.

11. The fair market value of the KATHRYN JO-ANN in September 1969, was $15,500. Its replacement value was about $65,000. Its purchase price in May 1969 was about $9,000; however, Captain Seaman said about $8,000 more was spent in refitting her for shrimping duty. The fair market value of the OC601 in September 1969, was $50,000. Its replacement value was about $80,000.[4] Its original purchase price in 1960 was $56,000.

12. While there is considerable confusion in this case, the Court does not find that Captain Seaman or Mrs. Dean have intentionally misrepresented or exaggerated any facts in this case as was suggested by defendant in its post-trial brief.

13. The evidence presented does not show that Captain Seaman unreasonably delayed returning the OC601 to its owners.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter in this case.

2. The criteria generally considered in fixing a salvage award were established by the Supreme Court in 1870 in The Blackwall, 10 Wall. 1, 77 U.S. 1, 19 L.Ed. 870. These have been summarized as follows:

"1. The degree of danger from which * * * property [is] rescued.

2. The value of the property saved.

---

3. Mr. Hunter Flores, President of a marine salvage company and a salvage master, testified he would have charged $1750 in September 1969, to pick up the OC601 where Seaman did and tow it to Bayou La Batre. Mr. Robert Stickney, a marine surveyor, testified that he would charge $2500 for the same service.

4. Experts varied in their estimates of fair market value from $35,000 to $70,000 and from $70,000 to $115,000 on replacement value. In their answer to plaintiff's interrogatory No. 3(a), defendant said her "value" was $50,000 in September 1969.

3. The risk incurred by the salvors in securing the property from the impending peril.

4. The promptitude, skill and energy displayed by the salvors in rendering the service and saving the property.

5. The value of the property employed by the salvors in rendering the service and the danger to which such property was exposed.

6. The time and labor expended by the salvors in rendering the salvage service."

Norris, The Law of Salvage, § 245 at 386 (1958)

█ 3. The cost of repairing damage suffered by the salving vessel in the salvage operation and the loss of profits caused by the delay of the salvage operation or repair time may also be a factor in determining the salvage award or may be given in addition to the salvage award. Gilmore and Black, The Law of Admiralty (Foundation Press, Brooklyn, 1957); Petition of United States, 229 F.Supp. 241 (D.Or.1963); The Alabama, 280 F. 738 (S.D.Tex.1922).

█ 4. It is unquestioned that salvage awards are not *quantum meruit,* but are rewards for seamen who voluntarily act to rescue life and property from the perils of the sea. It is public policy that these awards be liberal in order to encourage mariners to instinctively respond to need. Mississippi Valley Barge Line Co. v. Indian Towing Co., 232 F.2d 750 (5th Cir. 1956); Star Towing Company v. Barge ORG–6504, 301 F.Supp. 819 (E.D.La.1969).

█ The Court, after consideration of the above findings of fact and conclusions of law, is of the opinion that the plaintiff is entitled to recover from the defendant the amount of $7,553.00. This amount includes compensation for the salvage operation itself, the damages suffered by the KATHRYN JO-ANN, and the profits lost while the vessel was out of service for repairs.

Judgment will be entered in accordance with these findings.